**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Rachael Barnett, individually and on behalf of all others similarly situated,<br>Plaintiff,<br><br>- against -<br><br>Frito-Lay North America, Inc.,<br>Defendant | 3:21-cv-00470<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Frito-Lay North America, Inc. ("defendant") manufactures, markets and sells corn chips purporting to contain a "Hint of Lime" under the Tostitos brand ("Product").

2. Consumers "are eating fewer meals, yet snacking more than ever."[1]

3. Consumers seek snacks which are a "healthy indulgence," which is a "a treat with all the flavor and taste desired, without the guilt of eating something 'bad' for you," due to the presence of ingredients associated with positive health benefits.[2]

4. Companies are increasingly emphasizing their additions of actual fruit ingredients to make up for what is not consumed through traditional meals.[3]

5. Limes are one of the fruits that consumers increasingly add to foods, and their consumption has increased several hundred percent since 1990.

6. Market price data confirms the popularity of limes, as their price has risen consistently over the past two decades.

---

[1] Elizabeth Louise Hatt, Snackin' in the sun, Winsight Grocery Business, May 1, 2013.
[2] FONA International, Trend Insight: Indulgence, November 28, 2018.
[3] Mondelez Global, State of Snacking: 2020 Global Consumer Snacking Trends Study.

7. Reasons for consumers elevating limes above other citrus fruits include taste, texture, health benefits and adaptability.

8. Other reasons include the growing American appreciation for aspects of Hispanic cultures, where the lime has long been afforded primacy among fruits.

9. The use of limes is especially significant in consumption of Mexican foods, such as tortilla chips, or Corona, the preeminent Mexican beer.

10. The front label representations include "HINT OF LIME," a transparent cut-out of a lime wedge, with several drops of lime juice, a green and yellow color pattern and the statement, "Here's Another Hint – Squeeze in More Flavor With Some Salsa."




11. The representations mislead consumers as to the relative amount and quantity of lime ingredient.

12. Consumers understand "hint" the same way as its dictionary definition – a slight but appreciable amount.

13. The other statement, "Squeeze in More Flavor," gives the impression that the Product contains *squeezed* lime ingredients, hence the direction to "Squeeze" *more flavor*.

14. The front label attempts a "disclaimer" in the lower left corner, which states, "FLAVORED TORTILLA CHIPS."




15. This flavor designation is not visible to consumers when viewing the bag of chips, because the weight of its contents causes it to crumple over slightly at the bottom.

16. Even if consumers examined this small print disclosure *after* seeing the other representations, they would not know this meant the Product did not contain a "Hint of Lime."

17. The word "flavored" separates "food" from "flavor."

18. For example, lime juice or lime oil is considered food, because it is a source of nutritive value.

19. Lime flavor is the concentrated, compounded, synthesized and stripped-down version of lime juice or lime oil, added only for taste instead of nutritive value. *See* 21 C.F.R. § 101.22(a)(3).[4]

[4] Illinois incorporates the federal food labeling regulations in the Illinois Food, Drug and Cosmetic Act ("IFDCA") and its parallel regulations. See 410 ILCS 620/1, et seq.

20. Reasonable consumers will not know that "Flavored Tortilla Chips" is an implicit admission that the Product does not contain a "Hint of Lime," but a de minimis amount of lime.

21. The ingredient list fails to clarify the front label representations because it lists "Natural Flavors."

**INGREDIENTS:** Corn, Vegetable Oil (Corn, Canola and/or Sunflower Oil), Maltodextrin (Made from Corn), Salt, Sugar, Natural Flavors, Dextrose, Sour Cream (Cultured Cream, Skim Milk), Whey, Spice, and Yeast Extract.

22. "Natural Flavors" is the term used where a mix of extractives and essences from various fruits, along with additives and solvents, are combined in a laboratory.

23. "Natural Flavors" fails to tell consumers that the Product's taste is not only from limes and has a negligible amount of lime.

24. Because lime juice or lime oil is not a separately identified ingredient, it means that any real lime is present as a flavoring and is a *de minimis* or a trace amount of the "Natural Flavors."

25. According to flavor expert Bob Holmes, if a product provided "all the flavor depth" of a lime, the label would state, "lime juice" instead of "Natural Flavors."

26. The Product's "Natural Flavors" instead consists of flavor compounds which imitate the taste provided by limes.

27. These compounds are less expensive than using only real limes, and are more concentrated, so less of these compounds need to be used.

28. Limes gets their flavor from alcohols, aldehydes, esters, ethers, terpenes, hydrocarbons and ketones.

29. These compounds give limes their characteristic sour or bitter taste, complemented by tartness.

30. However, the Product's "lime" taste is mainly from added limonene and citral, through the isomers neral and geranial, and it lacks the other compounds essential to a lime's taste.

31. These compounds provide the woody and "piney" notes of real limes.

32. Lab analysis reveals or would reveal a relative abundance of limonene and citral, compared to the other key odor-active compounds in limes, which indicates a *de minimis* amount of lime.

33. The relative absence of these complementary flavor compounds causes the Product to lack an authentic lime taste.

34. The absence of these compounds indicates the use of less real lime ingredients than consumers will expect.

35. Consumers' preference is for foods which get their taste from food ingredients instead of added flavor, because this is perceived, and is, more natural, less processed and not exposed to additives or solvents that are used in making "natural flavors."

36. An appreciable amount of lime is an amount sufficient so that the lime flavor comes only from limes, instead of other citrus fruits, like oranges or lemons.

37. Consumers and plaintiff value limes for their ability to confer nutritive and health benefits.

38. Limes are high in vitamin C, a primary antioxidant which protects cells from damaging free radicals.

39. The polyphenol antioxidants in limes are linked with reducing hypertension.

40. The cost of using more lime ingredient would be approximately several cents per 300g – not a significant addition to their price.

41. Tortilla chips with a real "hint" of lime is not a rare or pricey delicacy such that it is unreasonable to expect this.

42. The Product is unable to confer any of the health-related benefits because it has less lime ingredients than it purports to.

43. Reasonable consumers must and do rely on defendant to honestly describe the components and features of the Product, relative to itself and other comparable products.

44. Reasonable consumers must and do rely on defendant to honestly describe the components and features of the Product.

45. Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

46. Defendant sold more of the Product and at a higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

47. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

48. Plaintiff paid more for the Product based on the representations than she would have otherwise paid.

49. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $2.98 for a 13 OZ (368.5g) bag, excluding tax, higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

50. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

51. Plaintiff Rachael Barnett is a citizen of Illinois.

52. Defendant Frito-Lay North America, Inc. is a Delaware corporation with a principal place of business in Plano, Collin County, Texas.

53. Diversity exists because plaintiff Rachael Barnett and defendant are citizens of different states.

54. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

55. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchase of plaintiff and her experiences identified here.

## Parties

56. Plaintiff Rachael Barnett is a citizen of Benton, Franklin County, Illinois.

57. Defendant Frito-Lay North America, Inc. is a Delaware corporation with a principal place of business in Plano, Texas, Collin County.

58. Defendant is a leading seller of corn and potato chips.

59. The Tostitos brand is the best-selling brand of tortilla chips.

60. Based on current projections, sales of tortilla chips are on track to eclipse potato chips in 2025.

61. The Product is sold at tens of thousands of retail locations – grocery stores, drug stores, big box stores, convenience stores, etc., and online.

62. The Product is sold in bags of various sizes.

63. Plaintiff purchased the Product on at least one occasion within the statutes of limitations for each cause of action, in April 2021, at stores including Walmart, 10 West Frankfort Plaza West Frankfort IL 62896.

64. Plaintiff bought the Product because she expected it would have more of the named fruit ingredient, not just for flavor but for its nutritive value.

65. Plaintiff expected that there would be more lime ingredient than there was.

66. The Product was worth less than what Plaintiff and consumers paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

67. Plaintiff paid more for the Product than she would have paid otherwise.

68. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product’s representations about its components and ingredients are consistent with its representations.

Class Allegations

69. The class will consist of all purchasers of the Product who reside in Illinois during the applicable statutes of limitations.

70. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

71. Common questions of law or fact predominate and include whether defendant’s representations were and are misleading and if plaintiff and class members are entitled to damages.

72. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

73. Plaintiff is an adequate representative because her interests do not conflict with other members.

74. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

75. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

76. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

77. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

78. Plaintiff incorporates by reference all preceding paragraphs.

79. Plaintiff and class members desired to purchase a product which more of the named fruit ingredient than it did.

80. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

81. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

82. Plaintiff relied on the representations.

83. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

84. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it more of the named fruit ingredient than it did.

85. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

86. This duty is based on Defendant's outsized role in the market for this type of Product.

87. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

88. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices over the past several years.

89. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

90. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

91. Defendant had a duty to truthfully represent the Product, which it breached.

92. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

93. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

94. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchases of the Product.

95. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

96. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

97. Defendant's fraudulent intent is evinced by its knowledge of the relevant regulations, as its misleading claims are carefully worded to avoid the obvious prohibited statements but still misleading.

Unjust Enrichment

98. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory damages pursuant to any statutory claims and

interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and
6. Other and further relief as the Court deems just and proper.

Dated: May 11, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com